In the Matter of John A. PIERCE and wife, Artie Jennie Pierce, Debtors.

John A. PIERCE and wife, Artie Jennie Pierce, Plaintiffs,

v.

Jake WOODARD t/a Woodard Furniture and Appliance, Shelton Jordan, Clerk of Court of Wayne County and James Sasser, Sheriff of Wayne County, Defendants.

Bankruptcy No. 82–01980–8.
Adv. No. M–83–0132–AP.

United States Bankruptcy Court,
E.D. North Carolina.

April 26, 1983.

Douglas P. Connor, Mount Olive, N.C., for plaintiffs-debtors.

W. Timothy Haithcock, Goldsboro, N.C., for defendant Jake Woodard.

Elaine J. Guth, Asst. Atty. Gen., N.C. Dept. of Justice, Raleigh, N.C., for defendant Shelton Jordan, Clerk of Court of Wayne County.

## MEMORANDUM OPINION

A. THOMAS SMALL, Bankruptcy Judge.

In this adversary proceeding the Debtors seek to enjoin the Defendant Jake Woodard t/a Woodard Furniture and Appliance ("Woodard") from enforcing a security interest and to recover damages for a violation of the discharge injunction provided by 11 U.S.C. § 524(a)(2). The trial was held on April 18, 1983.

## FACTS

On May 20, 1981, the Debtors executed a security agreement which gave Woodard a security interest in the following consumer goods: G.E. Range; G.E. Refrigerator; Bassett Bedroom Suite; Sealy Mattress and Spring; and Artistic Living Room Suite. No financing statements were filed by Woodard. The amount secured by Woodard's lien is $3,900.25.

The Debtors filed a petition under 11 U.S.C. chapter 7 on October 7, 1982. In their schedules the Debtors listed Woodard as an unsecured creditor and claimed as exempt the consumer goods that are subject to Woodard's security interest.

The Trustee did not attempt to use any of his avoiding powers to avoid Woodard's lien. Likewise, the Debtors took no affirmative action under 11 U.S.C. § 506(d), 11 U.S.C. § 522(f),[1] 11 U.S.C. § 522(h) or any other section of the Bankruptcy Code to set aside the Woodard security interest.

On December 14, 1982, at the request of the Trustee, the consumer goods subject to the Woodard lien were abandoned. A discharge was entered on December 20, 1982 and the Woodard indebtedness was discharged.

Woodard received proper notice but completely ignored the Debtors' bankruptcy case. He did not file a proof of claim, seek relief from the automatic stay or enter into a reaffirmation agreement with the Debtors. Woodard also did not object to being listed as an unsecured creditor or to having his collateral claimed as exempt.

Although remaining passive throughout the bankruptcy, after the property was abandoned Woodard wasted little time in pursuing the Debtors in the state courts. On January 7, 1983, Woodard filed suit against the Debtors in the District Court of Wayne County, North Carolina (No. 83 CvD–30) seeking a judgment of $3,900.25 and a "claim and delivery" order for seizure of the consumer goods subject to the Woodard lien. A Notice of Hearing in the state court action was served on the Debtors who filed an answer and plea in bar based upon their bankruptcy discharge of December 20, 1982.

On February 2, 1983, a hearing was held before the Honorable Shelton Jordan, Clerk of Court of Wayne County, North Carolina, who entered an Order of Seizure. The Clerk's order was then forwarded to the Sheriff of Wayne County for process.

The Debtors initiated this adversary proceeding on March 3, 1983, and on March 11, 1983 Bankruptcy Judge Thomas M. Moore entered an order temporarily restraining the Defendants from any further action in the Wayne County District Court proceeding.

The Defendant Clerk of Court for Wayne County moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion was granted to the extent that the Complaint sought damages from the Clerk and was otherwise denied; a separate order has been entered to that effect.

## DISCUSSION

The Debtors contend that because Woodard failed to file a proof of claim and did not contest the claimed exemption, Woodard is now prohibited by the Debtors' discharge from pursuing his lien rights.

The legislative history to the Bankruptcy Reform Act of 1978 clearly indicates that valid liens pass through bankruptcy intact and that the holder of a secured claim may stand back and take no part in the bankruptcy case. (House Report No. 95–595 at pp. 357 and 361; Senate Report No. 95–989 at p. 76, U.S.Code Cong. & Admin.News 1978, p. 5787). The Bankruptcy Code itself, however, is not as clear on that point.

11 U.S.C. § 524(a)(2) provides that a discharge:

> operates as an injunction against the commencement or continuation of an ac-

---

1. The Bankruptcy Code places no time limit within which an action under 11 U.S.C. § 522(f) must be brought. *In re Baskins*, 8 BCD 161, 14 B.R. 110 (Bkrtcy.E.D.N.C.1981). See also *In re Yazzie*, 24 B.R. 576, 10 BCD 76 (Bkrtcy.App. 9th Cir.1982).

tion, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, *or from property of the debtor,* whether or not discharge of such debt is waived; (emphasis added).

If valid liens may pass through bankruptcy unaffected and if the secured creditor may remain aloof from the bankruptcy as suggested in the House and Senate Reports, the prohibition in 11 U.S.C. § 524(a)(2) against proceeding against "property of the debtor" must refer only to property of the debtor *not subject to pre-bankruptcy liens.* Most of the courts that have considered the issue agree with that interpretation. *In re Weathers,* 15 B.R. 945, 8 BCD 524 (Bkrtcy. D.Kan.1981); *In re Cassi,* 24 B.R. 619, 9 BCD 1022 (Bkrtcy.N.D.Ind.1982); *In re Smiley,* 26 B.R. 680, 10 BCD 97 (Bkrtcy.D. Kan.1982); *In re Sawyer,* 18 B.R. 661, 8 BCD 1168 (Bkrtcy.D.Idaho 1982); *In re Andrews,* 22 B.R. 623, 9 BCD 589 (Bkrtcy. D.Del.1982); *In re Nason,* 22 B.R. 690, 9 BCD 599 (Bkrtcy.D.Me.1982); 3 *Collier on Bankruptcy* (15th Ed.) § 524.01 at p. 524–14. To the contrary, see *In re Williams,* 9 B.R. 228, 7 BCD 388 (Bkrtcy.D.Kan.1981); *In re Ray,* 26 B.R. 534, 10 BCD 19 (Bkrtcy. D.Kan.1983); and *In re Spendal,* 15 B.R. 698 (Bkrtcy.W.D.Mo.1981).

█ A secured creditor must, of course, respond to an attempt by the trustee or debtor to disallow or avoid his lien. Does the listing of the secured claim as being unsecured in the debtor's schedules require a response by the secured creditor? No, the secured creditor need only respond to a formal challenge to the security interest (e.g., an adversary proceeding brought pursuant to the trustee's avoiding powers, an adversary proceeding initiated by the debtor under 11 U.S.C. § 522(f), or a formal objection to the secured claim under 11 U.S.C. § 506(d)).

█ Likewise, the claiming of the secured creditor's collateral as exempt in the debtor's schedules does not require a response by the secured creditor. Property claimed as exempt is exempt in the absence of an objection by a party in interest (11 U.S.C. § 522(*l*)), but under 11 U.S.C. § 522(c) exempt property is subject to unavoided liens.

Although pre-bankruptcy liens are not affected by the discharge injunction they are subject to the automatic stay of 11 U.S.C. § 362(a). Enforcement of lien rights is stayed upon the filing of a bankruptcy petition as to property of the estate (11 U.S.C. § 362(a)(5)) and as to property of the debtor (11 U.S.C. § 362(a)(6)).

█ Unlike the discharge injunction which is permanent, the automatic stay is only temporary. The stay of 11 U.S.C. § 362(a) may be lifted at the request of a party in interest (11 U.S.C. § 362(d)) or it may terminate automatically upon the happening of certain events (11 U.S.C. § 362(c)). Under the local procedures in the Eastern District of North Carolina, when property is abandoned it is no longer subject to the automatic stay of either 11 U.S.C. § 362(a)(5) or 11 U.S.C. § 362(a)(6).[2] Consequently, in the present case Woodard was free to pursue his lien rights on the date of the abandonment, December 14, 1982.

█ The Debtor argues that the Woodard lien is unperfected because no financing statement was filed. Woodard argues that the lien is a purchase money security interest in consumer goods and that under North Carolina General Statute § 25–9–302(1)(d) no filing is required. Woodard's analysis is correct, but there is not sufficient evidence from which the Court can determine whether or not the Woodard lien constitutes a purchase money security interest.[3] Accordingly, the Court makes no de-

---

**2.** In jurisdictions which do not follow this practice, the automatic stay would continue with respect to the abandoned property because the abandoned property is still "property of the debtor." 11 U.S.C. § 362(a)(6). *In re Motley,* 10 B.R. 141, 7 BCD 477 (Bkrtcy.M.D.Ga.1981);

and *In re Cruseturner,* 8 B.R. 581, 7 BCD 235 (Bkrtcy.D.Utah.1981).

**3.** It is apparent that not all of the indebtedness secured by the Woodard lien represents purchase money advances. The effect of refinanc-

termination as to the purchase money character of the Woodard lien. Whether the lien is a purchase money lien, however, is irrelevant in this case. The fact is that neither the Debtors nor the Trustee sought to set the lien aside and the lien remains enforceable as between Woodard and the Debtor (North Carolina General Statute § 25-9-201).

■ Although a secured creditor's rights to pursue his pre-bankruptcy lien are not affected by the discharge injunction, the creditor may not attempt to collect the indebtedness as a personal liability of the debtor. In this case, Woodard not only sought a "claim and delivery" order against the collateral, he also sought a monetary judgment against the Debtors in the amount of $3,900.25. Consequently, Woodard has violated the discharge injunction of 11 U.S.C. § 524(a)(2) and is liable to the Debtors for any damages arising from that action.

There has been no execution against property of the Debtors, but the Debtors have incurred costs, including attorney's fees in defending the action.

Accordingly, the Court will deny the Debtors' request for an injunction prohibiting Woodard from pursuing his lien rights and for damages arising from his attempts to enforce those rights. The Court will award costs to the Debtors, including reasonable attorney's fees incurred as a result of Woodard's attempt to hold the Debtors personally liable for a discharged debt. If the parties cannot agree on the costs, a hearing will be held to make that determination.

An appropriate order shall be entered.

---

ing and the inclusion in the amount secured of non-purchase money advances has been the subject of considerable litigation. *In re Beasley,* 23 B.R. 404 (Bkrtcy.E.D.N.C.1982); *In re Jones,* 5 B.R. 655, 6 BCD 848 (Bkrtcy.M.D.N.C. 1980); *In re Rosen,* 18 B.R. 723, 8 BCD 1284 (Bkrtcy.D.S.C.1981); *In re Kelley,* 17 B.R. 770, 8 BCD 1010 (Bkrtcy.E.D.Tenn.1982); and *In re Matthews,* 20 B.R. 654, 9 BCD 171 (Bkrtcy. App. 9th Cir.1982).